UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re Yvette R. Torres,                              Chapter 7

                        Debtor.                      Case No. 05-11409 (RDD)
---------------------------------------------------------x

Yvette R. Torres,

                Plaintiff,

                - against -                          Adv. Pro. No. 06-01576 (RDD)

Chase Bank USA, N.A.,

                        Defendant
---------------------------------------------------------x

In re Ariadna Mateo,                                 Chapter 7

                        Debtor.                      Case No. 04-13404 (RDD)

---------------------------------------------------------x

Ariadna Mateo,

                Plaintiff

                - against -                          Adv. Pro. No. 06-01917 (RDD)

Chase Bank USA, N.A. and PRA III, LLC

---------------------------------------------------------x

Appearances:

For plaintiffs, Yvette Torres and Ariadna Mateo:  FleischmanLaw, P.C., by Jay S.
Fleischman, Esq.

For defendant, Chase Bank USA, N.A.:  Simmons, Jannace & Stagg, L.L.P., by Thomas
F. Stagg, Esq., and Jacqueline M. Della Chiesa, Esq.

## MEMORANDUM OF DECISION ON CHASE BANK USA, N.A.'S MOTION TO DISMISS AND FOR JUDGMENT ON <u>THE PLEADINGS UNDER FED. R. BANKR. P. 7012</u>

Robert D. Drain, United States Bankruptcy Judge:

Chase Bank USA, N.A. ("Chase") has moved in the <u>Torres</u> proceeding for judgment on the pleadings under Fed. R. Civ. P. 12(c) and in the <u>Mateo</u> proceeding to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), each incorporated by Fed. Bankr. R. 7012.[1]

The plaintiffs allege that Chase has violated the discharge injunction under section 524(a)(2) of the Bankruptcy Code, 11 U.S.C. §§ 101 <u>et seq.</u>, by refusing to update its disclosure to credit reporting agencies to note the effect of the plaintiffs' discharges on the enforceability of their unsecured debts to Chase. Bankruptcy Code section 524(a)(2) provides, in relevant part,

> A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.

11 U.S.C. § 524(a)(2).

The plaintiffs allege that, notwithstanding their attempts to cause their credit reports to be updated, the reports continue to show their obligations to Chase as "past due" and/or "charged off," with no notation that the debts have been affected by bankruptcy. The plaintiffs allege that Chase's refusal to update the information that it previously provided to the credit reporting agencies regarding their outstanding debts will

---

[1] The complaints were brought by the same counsel and are premised in large measure on the same allegations; Chase's motions therefore were argued together, and, except where noted, this memorandum of decision applies to them equally.

cause end users of the credit reports to conclude that the plaintiffs still owe an

enforceable debt to Chase, thus adversely affecting the plaintiffs' credit scores and ability

to obtain new credit.  Given Chase's refusal (which continues to date) to update the

information it provided to the credit reporting agencies, the plaintiffs contend that the

only way to change their credit reports (other than by starting these proceedings) is to pay

their debts in derogation of their discharges, a consequence, they contend, that Chase

understands and intends.

Based on the same factual allegations, Ms. Torres' amended complaint

also claims that Chase has violated the Fair Credit Reporting Act ("FCRA"), specifically

15 U.S.C. §§ 1681s-2(a)(1)(A) and 2(b), and both plaintiffs assert that Chase is liable for

defamation.

### Jurisdiction

There is no question that the plaintiffs' claims to enforce Bankruptcy Code

section 524(a)(2)'s discharge injunction are core proceedings "arising under" the

Bankruptcy Code (an individual chapter 7 debtor is accorded no more important

protection than his or her discharge under section 524(a) of the Bankruptcy Code), over

which this Court has subject matter jurisdiction pursuant to the District Court's July 20,

1984 general order of reference.  See 28 U.S.C. § 157(b)(1), (2)(O); 28 U.S.C. § 1334(b);

Lohmeyer v. Alvin's Jewelers (In re Lohmeyer), 2007 Bankr. LEXIS 909, at *2 (Bankr.

N.D. Ohio March 13, 2007).

However, the Court lacks subject matter jurisdiction over the defamation

claims and Ms. Torres' FCRA claim.[2]  The plaintiffs contend that these claims are

---

[2] Chase did not seek dismissal of these claims under Fed. R. Civ. P. 12(b)(1), but its memoranda of law
questioned the Court's jurisdiction, which the Court must in any event consider.  Fed. R. Bankr. P.

"related to" to their chapter 7 cases for purposes of 28 U.S.C. § 1334(b), but the

plaintiffs, having received their discharges in these fully administered chapter 7 cases,

seek damages for themselves, not their estates.  Because, therefore, the proceedings will

not affect the bankruptcy estates, they do not fall within the parameters of "related to"

jurisdiction articulated in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), which

at least since In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1996), generally

have been applied in this Circuit.  See Fernicola v. General Motors Acceptance Corp.,

2002 U.S. Dist. LEXIS 25164, at *7-9 (N.D.N.Y. Dec. 12, 2002) (bankruptcy court

would not have "related to" jurisdiction over FCRA claim, among others, when outcome

of the proceeding will not affect the estate); Vogt v. Dynamic Recovery Servs. (In re

Vogt), 257 B.R. 65, 68 (Bankr. D. Col. 2000) (same).  See also Csondor v. Weinstein,

Treiger & Riley, P.S. (In re Csondor), 309 B.R. 124, 129-30 (Bankr. E.D. Pa. 2004)

(declining to find "related to" jurisdiction over claim under Fair Debt Collections

Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), because the estate would not

benefit from a recovery); Goldstein v. Marine Midland Bank, N.A. (In re Goldstein), 201

B.R. 1, 5 (Bankr. D. Me. 1996) (same).[3]

---

12(h)(3), incorporated by Fed. R. Bankr. P. 7012; Csondor v. Weinstein, Treiger & Riley, P.S. (In re
Csondor), 309 B.R. 124, 127 (Bankr. E.D. Pa. 2004).

[3] The plaintiffs' authorities are not on point.  Wakefield v. Cavalry Portfolio Servs., LLC, 2006 U.S. Dist.
LEXIS 79987 (D. Or. Nov. 1 2006), involved only a claim under the FCRA, over which the district court
had non-bankruptcy jurisdiction, and although  In re Potes, 336 B.R. 731 (Bankr. E.D. Va. 2005), and In re
Miller, 2003 Bankr. LEXIS 2230 (Bankr. D. Idaho Aug. 15, 2003), discuss the FCRA, the plaintiffs in
those proceedings asserted claims for violation of the discharge under 11 U.S.C. § 524(a), not the FCRA.
They stand, therefore, only for the unremarkable proposition that the bankruptcy court may discuss a
statute, even if it lacks jurisdiction to adjudicate a claim under it, when the statute is relevant to the
proceeding over which the court has subject matter jurisdiction.  See In re Bank of New England Corp.,
2007 U.S. Dist. LEXIS 8271, at *18 (D. Mass. Feb. 6, 2007).  No decision has been located in which a
bankruptcy court was found, either expressly or implicitly, to have subject matter jurisdiction over a claim
under the FCRA pursuant to which the debtor, not the estate, seeks damages.

Nor does this Court, whose jurisdiction is prescribed by 28 U.S.C. § 1334 and the District Court's general order of reference, have supplementary jurisdiction to adjudicate the plaintiffs' defamation and FCRA claims under 28 U.S.C. § 1367. Enron Corp. v. Citigroup, Inc. (In re Enron Corp.), 353 B.R. 51, 63 (Bankr. S.D.N.Y. 2006) (distinguishing Klein v. Civale & Trovato, Inc. (In re Lionel Corp.), 29 F.3d 88, 92 (2d Cir. 1994)); In re Goldstein, 201 B.R. at 6-7; Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.), 241 B.R. 511, 517 n.6 (Bankr. S.D.N.Y. 1999) ("Assuming that the district court can exercise supplemental jurisdiction when it has original bankruptcy jurisdiction, it never referred its supplemental jurisdiction to the bankruptcy court, and section 157(a) would not authorize it anyway. In fact, the district court could no more refer its supplemental jurisdiction than it could refer its copyright, criminal or diversity jurisdiction."). But see Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1195 (9th Cir. 2005).

Therefore, the plaintiffs' defamation claims and Ms. Torres' FCRA claim should be dismissed because of the Court's lack of subject matter jurisdiction.

## Discussion

A. **Standard on Motion to Dismiss.** A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) only if it appears beyond doubt that the plaintiff would not be entitled to any type of relief even if the complaint's factual allegations were proven. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Harsco Corp. v. Segui, 91 F.3d 337, 341 (2d Cir. 1996). The court consequently must assume the truth of the complaint's factual allegations, drawing all reasonable inferences in the plaintiff's favor. Schueur v. Rhodes, 416 U.S. 232, 236 (1974); Harsco Corp. v. Segui, 91 F.3d at 341.

However, the court is not bound to accept as true a legal conclusion couched as a factual allegation, <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); rather, to withstand a motion to dismiss, the complaint and other documents that the court may consider[4] must contain sufficiently specific factual allegations to support a claim.  <u>Freidl v. City of New York</u>, 210 F.3d 79, 85-86 (2d Cir. 2000).  On the other hand, "[a]lthough bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one."  <u>Cooper v. Parsky</u>, 140 F.3d 433, 440 (2d Cir. 1998).  Under Fed. R. Civ. P. 8(a) (which is incorporated by Fed. R. Bankr. P. 7008 and applies to a claim asserted under Bankruptcy Code section 524(a), which does not trigger the need to comply with Fed. R. Civ. P. 9), the complaint need set forth only a short and plain statement sufficient to provide fair notice of the claim and the grounds upon which it rests.  <u>Conley v. Gibson</u>, 355 U.S. at 47.  The simplicity required by Rule 8 recognizes the ample opportunity, if a sufficient factual basis has been alleged, afforded by the Federal Rules for discovery and other pre-trial procedures.  <u>Id.</u> at 47-48.

In ruling on a motion to dismiss, the court evaluates the complaint's legal feasibility; it does not weigh the evidence that may be offered to support or defeat it. <u>Cooper v. Parsky</u>, 140 F.3d at 440.  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996).

The same standards apply to consideration of a motion to dismiss on the pleadings under Fed. R. Civ. P. 12(c).  <u>Greco v. Trauner, Cohen & Thomas, L.L.P.</u>, 412

---

[4] The court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."  <u>Hertz Corp. v. City of New York</u>, 1 F.3d 121, 125 (2d Cir. 1993).

F.3d 360, 363 (2d Cir. 2005). That is, the allegations in the complaint should be

construed liberally in the plaintiff's favor, and the complaint should not be dismissed

unless it appears beyond doubt that the plaintiff can prove no set of facts that would

entitle her to relief. <u>Ad-Hoc Committee of Baruch Black & Hispanic Alumni Ass'n v.</u>

<u>Bernard M. Baruch College</u>, 835 F.2d 980, 982 (2d Cir. 1987).

  **B. The Complaints' Allegations.** The complaints' basic allegations were

summarized above. More specifically, each plaintiff alleges that she is a consumer

within the meaning of the FCRA, <u>see</u> 15 U.S.C. § 1681a(c) and (b),[5] who when she filed

her chapter 7 case owed Chase an unsecured debt. Chase also is alleged to have received

actual notice of the chapter 7 cases and of the plaintiffs' discharge under Bankruptcy

Code section 524(a). It is further alleged that neither plaintiff entered into an agreement

under section 524(c) of the Bankruptcy Code reaffirming her debt to Chase or had her

debt to Chase declared non-dischargeable under section 523(a) of the Bankruptcy Code.

As a matter of law, therefore, the Court may infer that Chase no longer has the right to

enforce the plaintiffs' debts.

  Each complaint alleges, nevertheless, that after the issuance of her

discharge the plaintiff, having obtained a copy of her credit report (in Ms. Torres' case,

from Experian, and in Ms. Mateo's case, from Equifax and Trans Union), discovered that

the report continued to show a current balance owing to Chase ($2,672 in Ms. Torres'

case, $2,128 in Ms. Mateo's case). The credit reports are attached to the complaints; Ms.

---

[5] As discussed in note 3, above, although the Court lacks jurisdiction over Ms. Torres' FCRA claim, the FCRA may still be relevant to the plaintiffs' claims under section 524(a) of the Bankruptcy Code. For example, if the information supplied by Chase to the credit reporting agencies is accurate for purposes of the FCRA, it is hard to see how Chase's refusal to change it could be wrongful for purposes of section 524(a); on the other hand, if it is inaccurate, one may question why Chase has not corrected it and, if supported by other allegations, arguably may infer an improper motive from Chase's refusal to correct it, such as a desire to pressure the plaintiffs' to pay their discharged debts.

Torres' report describes the debt as "Account charged off/Past due 150 days," and Ms.

Mateo's report describes the debt as "Charged Off as Bad Debt."

The credit reports show that Chase, a furnisher of information to consumer

credit reporting agencies under the FCRA, had not updated the information that it had

supplied to the credit reporting agencies since before the start of the plaintiffs' respective

chapter 7 cases.  Consequently, the reports contain no notation of the effect of the

plaintiffs' bankruptcy cases on plaintiffs' indebtedness to Chase.  The complaints allege

that the plaintiffs requested Chase to update the information previously provided to the

credit reporting agencies to reflect the discharge of their debts to Chase and that Chase

refused to do so.  (The <u>Torres</u> complaint also attaches correspondence in which Ms.

Torres separately requested Experian to investigate and correct any failure to note her

bankruptcy discharge on her credit report and that Experian would, in keeping with the

FCRA, then inquire of Chase regarding the accuracy of Chase's reporting to it.)

The complaints allege that Chase has refused to update the information

that it had previously supplied to the credit reporting agencies and that, as a consequence,

the plaintiffs' credit reports incorrectly show their indebtedness to Chase to be

enforceable.  The complaints further allege that Chase knew that the presence of such

inaccurate information in the plaintiffs' credit reports would damage the plaintiffs' credit

ratings and ability to obtain new credit, that credit reporting constitutes an effort to

collect a debt, that by not updating the information previously provided to the credit

reporting agencies Chase has attempted to collect a discharged debt in violation of

section 524(a) of the Bankruptcy Code, and that the plaintiffs have suffered damages as a

result.

The <u>Torres</u> complaint further alleges that credit reporting and collection are two of the most basic components of Chase's business, that in the course of its business Chase both threatens to place and places a "past due" or "charge off" notation in a consumer's credit file with the intent to collect the debt, and that Chase repeatedly misrepresents in its reports to credit reporting agencies that debts discharged in bankruptcy cases are outstanding and past due because such misrepresentations, which impair the debtors' ability to obtain credit, are profitable to Chase, as they induce some debtors to pay their discharged debts.  This pattern or practice, it is alleged, constitutes an act to collect debts like Ms. Torres' in violation of Bankruptcy Code section 524(a).

**C.  Chase's Motions.**  Chase attacks plaintiffs' claims under Bankruptcy Code section 524(a) on three grounds, none of which, however, satisfies the high standard to sustain a motion to dismiss.

First, Chase contends that the complaints do not allege any "act to collect . . . [a] debt as a personal liability of the debtor," in the words of section 524(a)(2) of the Bankruptcy Code.  Instead, Chase argues, the plaintiffs are trying to hold it liable merely for having accurately reported, pre-bankruptcy, that the plaintiffs owed Chase debts that were in default, which debts, moreover, are still extant even if they are not enforceable because of the plaintiffs' bankruptcy discharge.

Relatedly, Chase argues that it has no duty after the plaintiffs obtained their discharges to update the information that it previously reported to the credit reporting agencies.

Last, Chase contends that the complaints do not support a claim for damages for contempt of the discharge injunction under Bankruptcy Code section

524(a)(2) because they insufficiently plead Chase's willfulness and egregious or oppressive conduct or bad faith.

In support of its first argument, Chase contends that Congress did not intend to include the type of credit reporting described in the complaints within the reach of the discharge injunction under section 524(a)(2) of the Bankruptcy Code. It contends that section 524(a) was meant to address, in addition to collection litigation, only such traditional, direct collection activity as dunning letters or telephone calls. This interpretation is contrary to the statute's plain terms, however, which are not so limited, but, rather, enjoin any act to collect a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). See also 4 Collier on Bankruptcy ¶ 524.02[2] (15th ed. 2007) ("broad injunction" under section 524(a)(2) "extends to all forms of collection activity, including letters, phone calls, threats of criminal proceedings or other adverse actions intended to bring about repayment") (emphasis added). See also id. ¶ 524.02[2][b] (detailing numerous instances when courts have found that conduct other than legal process or traditional dunning violated section 524(a)(2)).

The statute's plain terms obviate consideration of its legislative history, Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000), but it is worth noting that the legislative history, which Chase cites because of its reference to direct dunning activities, also supports a broad reading of the injunction contained in section 524(a)(2):

> Subsection (a) . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters, and personal contacts to collect, recover or offset any discharged debt as a personal liability of the debtor, or from property of the debtor, whether or not the debtor has waived discharge of the debt involved. The injunction is to give complete effect to the discharge and to

> eliminate any doubt concerning the effect of the discharge as a total
> prohibition on debt collection efforts.  This paragraph has been expanded
> over a comparable provision in Bankruptcy Act section 14f to cover any
> act to collect, such as dunning by telephone or letter, or indirectly through
> friends, relatives, or employees, harassment, threats of repossession and
> the like.  The change is consonant with the new policy forbidding binding
> reaffirmation agreements under proposed 11 U.S.C. § 524(d), and is
> intended to insure that once a debt is discharged, the debtor will not be
> pressured in any way to repay it.  In effect, the discharge extinguishes the
> debt, and creditors may not attempt to avoid that.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 365-66 (1977); S. Rep. No. 95-989, 95th

Cong., 2d Sess. 80 (1978) (emphasis added).

        With somewhat more force, Chase relies on three bankruptcy court

opinions pertaining to claims like the plaintiffs', which, Chase contends, stand for the

proposition that its refusal to honor the plaintiffs' requests to send the credit reporting

agencies an update, in light of the plaintiffs' discharge, of the information that it

previously supplied could never constitute an act to collect a debt.

        The first of these opinions, however, involved a hearing on a motion for a

default judgment under Fed. R. Civ. P. 55(b), incorporated by Fed. R. Bankr. P. 7055,

rather than, as here, a motion to dismiss.  Vogt v. Dynamic Recovery Servs. (In re Vogt),

257 B.R. 65, 67 (Bankr. D. Colo. 2000).  The plaintiff in Vogt offered no evidence of

liability or damages, instead merely reciting from his complaint.  Id.  This was

inadequate: "False reporting, if not done to extract payment of the debt, is simply not an

act proscribed by [section 524(a)(2)] of the Code.  There is absolutely no showing in this

case that the Defendant had manufactured a false report in order to extract payment."  Id.

at 71 (emphasis added).  In contrast, both complaints presently before the Court (although

the Torres complaint contains more detailed allegations regarding a pattern of such

behavior on Chase's part), whose averments the Court must accept as true for purposes of

these motions, allege more than merely false reporting.  They allege that Chase refuses to

honor the plaintiffs' request to correct the information it previously supplied to the credit

reporting agencies because Chase knows the pressure this places on plaintiffs to pay their

debts, notwithstanding their discharges, and intends to keep that pressure in place.

This is not a mere conclusory allegation, moreover.  One may reasonably

infer that prospective lenders rely on the accuracy of credit reports when deciding

whether to extend credit; if the credit reports show an outstanding, overdue debt,

prospective lenders will assume that the plaintiffs have fewer resources with which to pay

back a new loan.  Indeed, the pressure of not getting a new mortgage or having to pay a

higher rate because of a credit report's inaccurate characterization of a discharged debt

could well exceed the irritation caused by dunning letters, which one who knows his or

her rights under Bankruptcy Code section 524(a) may throw in the trash without fear of

adverse consequences.  It is reasonable to infer that Chase, whose business involves

making and evaluating credit disclosures, knows this.  The <u>Vogt</u> decision itself

corroborates this inference.  As that court observed,

> [T]he Plaintiffs applied for a home mortgage loan.  They were then
> informed that the Defendant still asserted that the Dallas debt was due and
> owing and that the same had been assigned to the Defendant for
> collection.  <u>The existence of this outstanding debt disqualified the
> Plaintiffs from receiving the loan they sought.</u>  The Plaintiffs contacted the
> Defendant 'in an effort to clarify the error' and to explain that the debt had
> been discharged in the earlier bankruptcy.  <u>At that point the Defendant
> agreed to correct 'the erroneous information' only if the Plaintiffs paid the
> debt in the amount of $2,582.  The Plaintiffs paid this amount because
> they feared they would lose their home loan if they did not do so.</u>

257 B.R. at 69 (emphasis added).[6]

---

[6] In nevertheless denying the plaintiffs' motion for a default judgment, the <u>Vogt</u> court apparently took the
view that the "real complaint here is less that the creditor demanded payment, and more with the allegation
that the Defendant, having received payment, failed to perform. . . .  [However,] [n]o evidence has been

Other courts have had no difficulty recognizing that false or outdated reporting to credit reporting agencies, even without additional collection activity, can constitute an act to extract payment of a debt in violation of section 524(a)(2).  See, e.g., In re Lohmeyer, 2007 Bankr. LEXIS 909, at *10 (Bankr. N.D. Ohio March 13, 2007), in which the court denied a motion to dismiss by a furnisher of information to credit reporting agencies:

> If Plaintiff . . . can prove that defendant inaccurately reported or failed to update the status of the debt as a current liability of Plaintiff's . . . for the purpose of coercing payment by Plaintiffs notwithstanding the discharge, which would essentially amount to lying in passive wait, then in this court's view a violation of the discharge injunction will have occurred without other overt collection action such as letters or harassing telephone calls.

(Emphasis added.)  See also Carriere v. Federal Credit Union, 2004 U.S. Dist. LEXIS 14095, at *20-23 (W.D. La. July 12, 2004) (motion to dismiss denied); In re Burgess, 2007 Bankr. LEXIS 142, at *4-6 (Bankr. E.D. Va. Jan. 12, 2007) (complaint sufficient); Norman v. Applied Card Sys., Inc. (In re Norman), 2006 Bankr. LEXIS 2576, at *3-5 (Bankr. M.D. Ala. Sept. 29, 2006) (motion to dismiss denied); Smith v. Am. General Finance Inc. (In re Smith), 2005 Bankr. LEXIS 2481, at *6-7 (Bankr. N.D. Iowa Dec. 12, 2005) (motion to dismiss denied); Helmes v. Wachovia Bank, N.A. (In re Helmes), 336 B.R. 105, 109 (Bankr. E.D. Va. 2005) (proceeding for injunction to correct credit report moot, because creditor had already corrected it).  One court in denying a motion to dismiss went so far as to observe that "[t]he sheer number of such cases may suggest that some creditors are systematically taking such action in an effort to diminish the value of a

---

proferred to the Court to show whether the Defendant failed to perform, or whether the credit reporting agencies failed to correct their credit reports."  257 B.R. at 72.  To the extent, however, that the decision might be cited for the proposition that a creditor does not violate Bankruptcy Code section 524(b)(2) by demanding payment of a discharged debt as a condition to correcting how it reports the debt to credit reporting agencies, the Court disagrees with it.

discharge in bankruptcy." In re Norman, 2006 Bankr. LEXIS 2576, at *4.  See also In re

Sommersdorf, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1992) (describing the inaccurate

notation of a debt on a credit report as "just the type of creditor shenanigans intended to

be prohibited by the automatic stay").

 The second of the three opinions relied upon by Chase, Irby v. Fashion

Bug (In re Irby), 337 B.R. 293 (Bankr. N.D. Ohio 2005), is distinguishable for the same

reason as Vogt; that is, in the context of a motion for a default judgment, the plaintiff

failed to offer sufficient evidentiary proof that the defendants' credit reporting was an act

to collect a debt.  As noted by another bankruptcy judge from the same district, "[t]he

decision in Irby was rendered in the context of a default judgment where plaintiffs were

put to their proofs, fell back on the complaint and were found to be lacking by the court."

In re Lohmeyer, 2007 Bankr. LEXIS 909, at *9.  Contrary to Chase's contention,

moreover, "Irby acknowledges that there are certain situations in which reporting a debt

can be considered an act sufficient to violate the discharge injunction, 'if the act of

reporting a debt was undertaken for the specific purpose of coercing the debtor into

paying the debt, a violation of the discharge injunction could be established.'"  Id.

(quoting In re Irby, 337 B.R. at 295).

 Irby and the third opinion relied upon by Chase, Bruno v. First USA Bank,

(In re Bruno), 356 B.R. 89 (Bankr. W.D.N.Y. 2006), also are distinguishable from the

present motions for a related reason.  In both decisions, the courts apparently assumed

that the information that the creditor had previously provided to the credit reporting

agencies was still accurate, notwithstanding the debtor's subsequent discharge.  In re

Bruno, 356 B.R. at 92 ("discharge does not extinguish the debt, but only the remedy"); In

14

re Irby, 337 B.R. at 295 ("it is difficult to discern how -- and, therefore, the Court cannot

conclude that -- the sole act of reporting a debt, whose existence was never extinguished

by the bankruptcy discharge, violates the discharge injunction.  All that is being reported

is the truth.").[7]  Thus, the plaintiffs in those proceedings apparently did not inform the

courts that the information previously supplied by the creditor to the credit reporting

agency would be inaccurate and misleading unless updated to reflect the discharge.

It is true, of course, that a bankruptcy discharge does not send a debt into

the equivalent of 1984's "memory hole."  One can always volunteer, for example, to pay

a discharged debt, and it is common for debtors to protect against a lien creditor's right to

repossess collateral by reaffirming a secured debt under 11 U.S.C. § 524(c).[8]  However, a

credit report that continues to show a discharged debt as "outstanding," "charged off," or

"past due" is unquestionably inaccurate and misleading, because end users will construe

it to mean that the lender still has the ability to enforce the debt personally against the

debtor, that is, that the debtor has not received a discharge, that she has reaffirmed the

debt notwithstanding the discharge, or that the debt has been declared non-dischargeable.

See In re Helmes, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005):

> A credit report entry that reflects a past due account is treated differently
> by prospective creditors in evaluating credit applications than an entry that
> reflects a debt that has been discharged in bankruptcy.  The essential
> difference is that a discharged debt represents a historical fact, that the
> prospective borrower filed bankruptcy in the past and was relieved from

---

[7] Vogt, also made this point, noting that "the discharge does not wipe away the debt.  It only serves to eliminate the debtor's personal responsibility to pay the debt," 257 B.R. at 70, although the court acknowledged that once the plaintiff had repaid the debt in response to the creditor's demand to do so, the credit report was inaccurate.

[8] The discharge under Bankruptcy Code section 524(a) applies only to "personal" obligations; valid and non-avoidable liens and other property interests may be enforced notwithstanding the discharge.  Johnson v. Home State Bank, 501 U.S. 78, 84-85 (1991); In re Dabrowski, 257 B.R. 394, 398, 413 (Bankr. S.D.N.Y. 2001).

the obligation.  Nothing is now due.  A past due debt represents a
delinquent but legally enforceable obligation that must be resolved.

See also Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995 (7th Cir. 2003) (assertion

that a person owed a debt that, because of the discharge, in effect no longer exists, is "on

its face . . . false."); White v. Trans Union, LLC, 462 F. Supp.2d 1079, 1082 (C.D. Cal.

2006) (credit reports that do not reflect a bankruptcy discharge are inaccurate); 16 C.F.R.

600 app. § 607(b)(3)(F)(2) ("[A] consumer reporting agency may include delinquencies

on debts discharged in bankruptcy in consumer reports, but must accurately note the

status of the debt (e.g. discharged, voluntarily repaid).").

Moreover, contrary to Bruno's conclusion that fault could never be found

in the refusal to update a once-accurate credit report, 356 B.R. at 91, such a report clearly

may become inaccurate in light of changed circumstances, such as the debtor's discharge.

16 C.F.R. 600 app. § 607(b)(3)(F)(1) ("A consumer reporting agency must employ

reasonable procedures to keep its file current on past due accounts (e.g., by requiring its

creditors to notify the credit bureau when a previously past due account has been paid or

discharged in bankruptcy"); id. § 607(b)(3)(F)(6) ("A consumer report . . . may contain

any information that is complete, accurate, and not obsolete on the consumer who is the

subject of the report.  A consumer report may include an account that was discharged in

bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance to reflect

the fact that the consumer is no longer liable for the discharged debt.").  Chase's

contention to the contrary in essence argues that credit reporting is of only historical

interest, lacking any continuing effect on a consumer's life, a highly unusual position for

a financial institution to take.

Chase attempts to overcome this problem by arguing that only credit reporting agencies, not information furnishers, face liability under the FCRA for the failure to update obsolete reports.  However, the plaintiffs' claims arise under Bankruptcy Code section 524(a), not the FCRA.  Particularly where Chase has rebuffed the plaintiffs' requests to correct the information it previously provided to the credit reporting agencies,[9] one may, in the context of a motion to dismiss, reasonably infer an improper purpose underlying Chase's conduct to pressure the plaintiffs to pay their debts without having to construe whether Chase has a separate duty under the FCRA to correct its prior reporting. [10]  See Carriere v. Federal Credit Union, 2004 U.S. Dist. LEXIS 14095, at *20-23; In re Lohmeyer, 2007 Bankr. LEXIS 909, at *10; In re Burgess, 2007 Bankr. LEXIS 142, at *4-6; In re Norman, 2006 Bankr. LEXIS 2576, at *3-5.

As is not atypical under section 524(a) of the Bankruptcy Code, determining Chase's motions involves drawing lines between coercive and non-coercive

---

[9] This is another basis for distinguishing the present motions from Bruno and Irby, in which the courts expressed some frustration with plaintiffs who, unlike Ms. Torres and Ms. Mateo, apparently did not attempt to have their credit reports corrected before commencing litigation.  In re Bruno, 356 B.R. at 90-91, 92; In re Irby, 337 B.R. at 294.  On the other hand, to the extent that these decisions may suggest that a debtor's remedy for inaccurate reporting undertaken to collect a discharged debt is limited to a claim under the FCRA, this Court disagrees.  See Thomas v. U.S. Bank, N.A., 2007 U.S. Dist. LEXIS 17516, at *29-30 (D. Or. March 8, 2007); In re Potes, 336 B.R. 731, 733 (Bankr. E.D. Va. 2005) (a claim for violation of Bankruptcy Code section 524(a) is not preempted by FCRA, because neither statute expressly preempts the other:  while "[t]he elements that must be proved under each statute may overlap . . . they are not identical. The remedies available, while similar, may differ.").

[10] Nor may the plaintiffs reasonably relieve themselves of the pressure of Chase's inaccurate reporting, as Chase contends, by separately informing prospective lenders or the credit reporting agencies of their bankruptcy discharge.  At a minimum, this would put the plaintiffs in conflict with the information supplied to the agencies by Chase.  And even if the plaintiffs were able to persuade the credit reporting agencies to report generally that they have received a bankruptcy discharge, such as by providing them with a copy of the discharge notice, it would be exceedingly difficult for the plaintiffs to prove that they have not reaffirmed their debts to Chase under section 524(c) of the Bankruptcy Code or that those debts were not declared non-dischargeable under section 523(a) of the Bankruptcy Code, as this would be tantamount to having to prove a negative:  there will be no order on the docket stating that the plaintiffs have not reaffirmed their debts to Chase (indeed, it is this Court's practice not to enter an order approving a reaffirmation agreement, see Rein v. Providian Fin. Corp., 270 F.3d 895, 901 (9th Cir. 2001) ("court approval of a reaffirmation agreement executed by debtors represented by counsel is not even required by statute")) or that their debts were not declared non-dischargeable.  Thus, it is up to Chase to correct the misimpression that it has caused by showing the debts to be enforceable.

behavior.  Compare Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81,

84-85 (3d Cir. 1988) (no breach of section 524(a) where creditor merely refused to

provide new banking services to defaulted borrowers without intent to coerce payment of

discharged debt) and Olson v. McFarland Clinic, P.C. (In re Olson), 38 B.R. 515, 518

(Bankr. N.D. Iowa 1984) (hospital violated section 524(a) by refusing to provide services

with the intention of coercing debtor to pay discharged debt).  But here, Chase has not

articulated any valid reason for refusing to correct its outstanding report.  Its refusal, at

this point, obviously is not a matter of inadvertence, in contrast with the creditor's

behavior in In re Helmes, 336 B.R. 105, 109 (Bankr. E.D. Va. 2005).  One may infer,

therefore, that something is wrong with Chase's decision to rebuff the plaintiffs'

legitimate request to make the record right, which puts Chase, for purposes of this

motion, on the wrong side of the line under section 524(a).

        Moreover, while noncompliance with the FCRA is not necessary for the

plaintiffs to state a claim under Bankruptcy Code section 524(a), Chase's argument that

its refusal to correct clearly inaccurate information that it previously reported to the credit

reporting agencies does not constitute a violation of the FCRA is questionable.  Contrary

to Chase's contention that only the credit reporting agencies have such a duty, the 1996

amendments to FCRA, specifically section 1681s-2(a), also impose a duty upon

furnishers of information, such as Chase, to provide "accurate information" to credit

reporting agencies.  Vazquez-Garcia v. Trans Union de Puerto Rico Inc., 222 F.Supp.2d

150, 154 (D.P.R. 2002) (construing 15 U.S.C. § 1681s-2(a) (2003)).  Moreover, unlike

the duty to investigate imposed on furnishers of information by FCRA section 1681s-

2(b), the duty imposed on furnishers to provide accurate information under section

18

1681s-2(a) exists "regardless of whether the furnisher has notice of a dispute." Islam v. Option One Mortgage Corp., 432 F.Supp.2d 181, 191-192 (D. Mass. 2006) (citing Gordon v. Greenpoint Credit, 266 F.Supp.2d 1007, 1013 (S.D. Iowa 2003)).[11] If, indeed, Chase is violating a statutory duty to correct the information it provided to the credit reporting agencies, its conduct is even farther removed from that of the credit union in Brown v. Pennsylvania State Employees Union, which had no obligation whatsoever to provide banking services that were available to the discharged debtor from other sources. 851 F.2d at 85-86.

As noted above, Chase also moves to dismiss the complaints on the basis that the plaintiffs do not allege a sufficient basis for damages. (This would not apply, of course, to the plaintiffs' request to enforce the discharge injunction. See In re Helmes, 336 B.R. at 109 (request for injunctive relief is moot because creditor had corrected the information it had previously supplied to the credit reporting agencies).) Chase correctly notes that the monetary relief sought by the plaintiffs in connection with its alleged breach of section 524(a) of the Bankruptcy Code is properly viewed as a sanction for civil contempt. In re Cruz, 254 B.R. 801, 816 (Bankr. S.D.N.Y. 2000); 4 Collier on Bankruptcy ¶ 524.02[2][c]. For the Court to find a party in contempt "'the burden rests with the movant to show [by clear and convincing evidence] that the offending… entity had knowledge [actual or constructive] of the discharge and willfully violated it by continuing with the activity complained of.'" In re Cruz, 254 B.R. at 816 (quoting

---

[11] The Torres complaint alleges that Ms. Torres initiated a dispute resolution process under the FCRA by notifying the credit reporting agency, which then would seek clarification from Chase; the Mateo complaint does not allege this procedural step, merely alleging that Ms. Mateo noted the inaccuracy to Chase, which nevertheless refused to update the information it had provided to the credit reporting agencies. For the reasons stated above, however, while this distinction may be important if Ms. Mateo wants to pursue a cause of action against Chase under section 1681s-2(b) of the FCRA in another forum, it is not material for purposes of Chase's motion to dismiss the Mateo complaint's claim for violation of Bankruptcy Code section 524(a)(2).

Waswick v. Stutsman County Bank (In re Waswick), 212 B.R. 350, 352 (Bankr. D.N.D. 1997)).

"[S]anctions in civil contempt proceedings may be employed 'for either or both of two purposes:  to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC, 478 U.S 421, 443 (1986) (citations omitted).  "[P]enalties designed to compel future compliance with a court order are considered to be coercive and avoidable through compliance and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."  Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994).  See also In re Lohmeyer, 2007 Bankr. LEXIS 909, at *8 n.2 (discussing nature of sanctions for breach of discharge injunction); In re Lohnes, 26 B.R. 593, 596 (Bankr. D. Conn. 1983) (discussing sanctions for violation of automatic stay).

Thus compensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction.  In re Cultrera, 2007 WL 117747, at *2 (Bankr. D. Conn. Jan. 16, 2007).  It has been held that attorneys fees also may be awarded if, in addition to showing that the breach of the discharge injunction was willful, it is established that the defendant acted in bad faith or in a vexatious or oppressive manner.  In re Dabrowski, 257 B.R. 394, 416 (Bankr. S.D.N.Y. 2001); In re Cruz, 254 B.R. at 816.

Here, the plaintiffs have not alleged any actual damages, other than the cost of seeking to correct Chase's conduct, that is, their attorneys fees and expenses. Given that Chase has continued to refuse to correct the information it previously reported,

however, as well as the plaintiffs' allegations that Chase has rebuffed their requests with the specific intent to pressure them into paying their discharged debts, the complaints on their face meet the test stated in <u>Dabrowski</u> and <u>Cruz</u>.  The essence of the plaintiffs' allegations is that Chase has continued to lay a trap for them until the eventual day that they need an accurate credit report.  2007 Bankr. LEXIS 909, at *10.  Such behavior, if proven at trial, would be sufficiently vexatious and oppressive to support at least a sanction in the amount of the plaintiffs' costs and expenses incurred in releasing the trap, separate and apart from any sanction to coerce future compliance with section 524(a)(2).

One issue raised by Chase is unique to Ms. Mateo.  Chase claims to have assigned her debt to another entity, PRA III, LLC, and at least one of the two credit reports attached to the <u>Mateo</u> complaint so states.  As indicated, however, by the fact that the other credit report does not show an assignment of the debt, it is not clear, in the context of Chase's motion to dismiss, whether Chase can be said to have been relieved of all reporting and collection responsibility with regard to Ms. Mateo's indebtedness.  Ms. Mateo is entitled to discovery of the allocation of such responsibility between Chase and PRA III, LLC.[12]

### <u>Conclusion</u>

For the foregoing reasons, Chase's motions to dismiss the defamation claims in the complaints and the FCRA claim in the <u>Torres</u> complaint should be granted under Fed. R. Civ. P. 12(h)(3), and Chase's motions to dismiss the complaints' claims for

---

[12] For this reason, and because the Court sees nothing of a truly proprietary or confidential nature in an assignment agreement between Chase and PRA III, LLC -- Chase not having identified any such information in the agreement, but, instead, merely having pointed to the agreement's recital that the parties intended to keep its terms confidential -- Chase's request to have the agreement (which appears to have been supplied to counsel for Ms. Mateo by PRA III, LLC) removed from the docket is denied.

violation of the discharge injunction under section 524(a) of the Bankruptcy Code should

be denied.

Dated:  New York, New York
        May 3, 2007


                        _____/s/Robert D. Drain_____
                        United States Bankruptcy Judge